UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-189-GWU


CHARLES FRANKLIN BARBER,                                    PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                           DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Charles Franklin Barber, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of a back strain.  (Tr. 13).  He also had a non-severe impairment, depression.  (Tr. 14).  The ALJ concluded that Mr. Barber retained the residual functional capacity to perform a full range of "light" level work, and applying Rule 202.18 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to a person of Mr. Barber's age, education and work experience, found the plaintiff was "not disabled."  (Tr. 14-17).  The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Barber alleged disability beginning October 15, 2006 due to lower back problems (Tr. 102), and at the administrative hearing on April 16, 2008, also described depression, for which he had sought treatment from a psychiatrist (Tr. 33).  The psychiatrist, Dr. Reginia Bokhari, had prescribed the medications Abilify and Klonapin, but he had been forced to discontinue treatment after three or four visits due to financial difficulties.  (Tr. 28-9).  Regarding physical limitations, Mr. Barber testified that his back and hip problem limited his activities, and he had been told not to lift over 20 pounds.  (Tr. 27, 29).  He felt he could sit only 15 or 20 minutes without changing positions, and could only stand 3 or 4 minutes without pain.  (Tr. 29-30).

Regarding physical problems, the evidence shows a number of emergency room visits in 2006 (e.g., Tr. 180-1, 183-8).  The plaintiff was given medication and urged to follow up with a primary care physician.  Although there are notes from a primary care physician, reflecting prescriptions of pain medications and muscle relaxers, they provide very little information.  (Tr. 206-11).  Recognizing the paucity of evidence, the ALJ referred Mr. Barber for a consultative examination by Dr. David Muffly, an orthopedist.  (Tr. 34-5, 236).  Dr. Muffly's examination showed some stiffness in the low back, with lumbrosacral tenderness and spasm and a slightly limited range of motion.  (Tr. 237-8).  Dr. Muffly also reviewed an MRI of the lumbrosacral spine from October, 2004 which indicated mild disc protrusions at two levels with no significant stenosis.  (Tr. 238).  His assessment was that the plaintiff

had a mild disc protrusion at L3-4 and L4-5 with no signs of nerve root impingement. (Id.).  He placed restrictions of not lifting more than 20 pounds, with a total of four hours of standing and walking and six hours of sitting in an eight hour day, along with a position change every one hour.  He opined that the plaintiff, who had described numbness in his left toes, could use the left foot only occasionally for operation of foot controls, that he should never climb ladders and scaffolds, could occasionally stoop and climb stairs and ramps, and needed to avoid unprotected heights and vibration.  (Tr. 238-47).

Additionally, there was a report dated June 23, 2008 from Denita K. McDonald, a registered nurse practitioner, which was countersigned by Stephanie Southard, a doctor of osteopathy.  This report also limited the plaintiff to "light" level exertion and additional non-exertional restrictions.  There are no office notes accompanying the form, which indicates that Mr. Barber had been seen for the first time on May 23, 2008.  (Tr. 249).  Some of the restrictions may also have been intended to be temporary.  (Tr. 250).

The ALJ summarized the physical findings of Dr. Muffly and indicated that he gave great weight to his opinion that the plaintiff was limited to light level exertion, which was also consistent with the subsequent opinion (which he attributed to the nurse practitioner rather than Dr. Southard), and with the plaintiff's statements that Dr. Mooney had advised him not to lift more than 20 pounds.  (Tr. 15-16).  No

mention of the non-exertional restrictions assessed by Dr. Muffly and Dr. Southard is made in the hearing decision.

From a psychological standpoint, Dr. Bokhari submitted a report dated December 19, 2007, indicating that she had seen the plaintiff on two occasions and had diagnosed major depressive disorder with a current Global Assessment of Functioning (GAF) score of 50, with the highest score for the past year being 55. (Tr. 229). She described her patient's symptoms as sleep disturbance, personality change, mood disturbance, emotional lability, anhedonia or pervasive loss of interest, psychomotor agitation or retardation, feelings of guilt and worthlessness, difficulty thinking and concentrating, social withdrawal and isolation, decreased energy, persistent irrational fears, and "anger/road rage/pain." (Id.). She stated that he was not a malingerer, and had been started on supportive therapy as well as medications on his last visit. (Tr. 30). She did expect his impairment to last at least 12 months. (Tr. 231). In terms of functional limitations, the psychiatrist indicated that Mr. Barber would have an "extreme" restriction of activities of daily living, "constant" deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, and "continual" episodes of deterioration or decompensation in work or work-like settings which would cause him to withdraw from the situation or to experience exacerbation of his signs and symptoms. (Tr. 232). She also felt that he would have "marked" difficulties in maintaining social functioning. (Id.).

Regarding the psychological evidence, after noting that the plaintiff had not initially alleged depression and that a state agency psychological consultant who had reviewed the evidence on July 13, 2007 had found no medically determinably medical impairment, the ALJ stated that "he did seek treatment, albeit very short-term, and was given a diagnosis."  (Tr. 14).  The ALJ did not say the diagnosis was major depressive disorder.  He went on to state that the GAF score was "assessed at 50-55, connoting moderate psychological symptoms," and concluded that the depression was a "non-severe impairment as it is no more than a slight abnormality and has no more than a minimal effect on the ability to do basic work activities." (Id.).  He reached this conclusion without any mention of Dr. Bokhari's reported restrictions.

On appeal, the plaintiff asserts that Dr. Bokhari was a treating source, and that the ALJ did not give "good reasons" for rejecting her opinions, as required by Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  The plaintiff goes on to note that it was improper to rely on the grids where the plaintiff could not perform a full range of work at the light level.  The defendant appears to concede in his brief that Dr. Bokhari was a treating source, but argues that the ALJ's opinion gave adequate reasons for discounting her assessment.  Commissioner's Motion for Summary Judgment, Docket Entry No. 11, pp. 5-7.  If Dr. Bokhari is a treating source, as the Commissioner appears to concede, there is no question that the ALJ's decision fails to give "good reasons" under Wilson.  The Sixth Circuit

found in <u>Bowen v. Commissioner of Social Security</u>, 478 F.3d 742, 747 (6th Cir.

2007) that a complete failure to mention a treating source's opinion is grounds for

a remand, because the goal of explaining to a plaintiff why his treating physician's

opinion is being disregarded has clearly not been met.  However, even if Dr. Bokhari

is not properly considered to be a treating source, the ALJ's decision is still deficient

because Dr. Bokhari was the only mental health professional to examine the plaintiff

and offer an opinion.  Not only were her specific opinions overlooked or ignored, but

the ALJ mischaracterized the GAF scores of 50-55 as representing only "moderate"

symptoms.   A GAF score of 41 to 50 actually represents "serious" symptoms.

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p.

34.[1]

Accordingly, the use of the grid rules was improper and a remand will be

required for further evaluation of the evidence and vocational expert testimony.

Although the plaintiff did not specifically raise the issue in her brief, the court

notes in passing that the ALJ's failure to discuss Dr. Muffly's physical restrictions

---

[1]On top of that, the Sixth Circuit has found that "moderate" restrictions in mental functioning are inconsistent with a finding of a non-severe mental impairment.  <u>Simpson v. Commissioner of Social Security</u>, 344 Fed. Appx. 181, 2009 WL 2628355 at *18-20 (6th Cir. 2009).  Although <u>Simpson</u> is an unpublished case, it also cites other Sixth Circuit precedent and the Commissioner's regulations for the proposition that "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."  <u>Id.</u> at *17, citing 20 C.F.R. §§ 404.1523; 404.1545(a)(2).  Therefore, finding that the plaintiff's depression was medically determinable yet "non-severe" would not be the end of the ALJ's analysis, in the presence of the "severe" physical impairment.

was also erroneous.  Simply saying that the physician had limited the plaintiff to light level exertion is a gross mischaracterization of his report.  See Hurst v. Secretary of Health and Human Services, 753 F.2d 517, 519 (6th Cir. 1985) ("failure to consider the record as a whole undermines the Secretary's conclusion").  The use of the grid rules would be precluded under Dr. Muffly's restrictions by the restriction to four hours of standing and walking and six hours of sitting with a position change every one hour, since light work generally requires approximately six hours standing in an eight hour day and the Sixth Circuit has ruled that a requirement to alternate sitting and standing precludes the use of the sedentary grids.  Social Security Ruling 83-10, at *5-6; Preston v. Secretary of Health and Human Services, 854 F.2d 815, 819 (6th Cir. 1988).

The decision will be remanded for further consideration.

This the 9th day of March, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**